IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 8, 2005

## THOMAS M. McCORMICK v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Bedford County**
**No. 9668      Charles Lee, Judge**

––––––––––––––––

**No. M2004-00042-CCA-R3-PC - Filed March 28, 2005**

––––––––––––––––

The petitioner, Thomas M. McCormick, appeals as of right the dismissal of his petition for post-conviction relief by the Bedford County Circuit Court.  He seeks relief from his conviction for aggravated assault and sentence of twelve years as a Range III, persistent offender.  The petitioner contends that he received the ineffective assistance of counsel which caused him to enter an unknowing and involuntary guilty plea.  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and J. C. MCLIN, JJ., joined.

Donna Leigh Hargrove, District Public Defender, and Andrew Jackson Dearing, III, Assistant Public Defender, for the appellant, Thomas M. McCormick.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; William Michael McCown, District Attorney General; and Michael D. Randles and Ann L. Filer, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

The petitioner was initially indicted for two counts of especially aggravated kidnapping, a Class A felony, and two counts of aggravated assault, a Class C felony.  Pursuant to a plea agreement, the petitioner pled guilty to one count of aggravated kidnapping, a Class B felony.  Shortly after the petitioner entered his guilty plea, his attorney realized that she had neglected to inform him that persons committing the offense of aggravated kidnapping are required to serve one hundred percent of the sentence imposed by the court. See T.C.A. § 40-35-501(i)(1), (i)(2)(D).  The petitioner was allowed to withdraw his guilty plea.  After further negotiations, the petitioner pled guilty to aggravated assault, a Class C felony, and was sentenced to twelve years as a Range III, persistent offender with release eligibility after serving forty-five percent.

At the first guilty plea hearing, the trial court informed the petitioner that it would ask a series of questions after the petitioner was placed under oath and that a false answer or statement concerning a material fact could result in a charge of perjury. The petitioner informed the trial court that he understood. The trial court asked the petitioner if he read and understood the guilty plea petition. The petitioner responded affirmatively. The trial court asked the petitioner whether he understood he was waiving certain rights, including the right to a trial by jury, and explained in detail what those rights entailed. The petitioner responded that he understood. The trial court asked the petitioner whether he understood the range of punishment for the offense would be "at least 8 years and could be as many as 30 years," and if he had less than two felony convictions, the range of punishment "would be not less than 8 nor more than 12 years." He replied that he understood the range of punishment. The state informed the trial court the petitioner was a Range I, standard offender. The trial court asked him if there had been any threats or promises made to him concerning the guilty plea, other than those announced in court on that day. He replied negatively and said he had no questions.

The state presented the following factual basis to support the plea and agreement: On September 8, 2002, the petitioner removed his wife from her mother's home in Coffee County at gunpoint. He physically pulled her out of the house by her hair, placed her in his truck, and beat her with wooden sticks and his fists during the trip back to their home in Bedford County. When a Bedford County police officer arrived at the petitioner's home, he could see the silhouette of one figure striking another through a window. The officer knocked. The petitioner answered the door and was asked to step outside. The petitioner's wife was severely bruised and blood was coming from her mouth and feet. She was mainly incoherent but was able to convey that she was taken from her mother's home at gunpoint and beaten during the entire drive home. Once they arrived, the petitioner continued to beat her with his fists and with belts and held knives to her throat. He told her she was going to die. The officers found blood and a chunk of flesh inside the truck. They also found a .22 caliber Derringer pistol and several wooden carving sticks matching descriptions of the items with which the victim said she was beaten. The petitioner acknowledged the facts as presented. The trial court scheduled the sentencing hearing, but the petitioner subsequently withdrew his guilty plea to the aggravated kidnapping charge.

After additional plea negotiations, the petitioner pled guilty to aggravated assault. At the hearing on the petitioner's second guilty plea the following colloquy occurred:

> COURT: The Court previously entertained and did accept a plea of guilty in this matter. The Court previously explained to [the petitioner] all of the rights which were associated with the entry of a plea of guilty; ascertained that his plea was freely and voluntarily made; and then afterwards because of a misunderstanding not about any of the rights which the [petitioner] had, but about the nature of the

-2-

plea itself, the Court allowed the plea to be withdrawn. So, [to the petitioner] do you recall that when you previously appeared before the Court and the Court explained to you all of the rights which you had and the State told the Court the factual basis surrounding that, has any of that changed?

[PETITIONER]: No, sir.

COURT: General, what is the agreement which you have reached in this matter?

[STATE]: Please the Court, the agreement is that the [petitioner] plead guilty to count 2, which is a C grade felony, aggravated assault. He is waiving his – the sentencing range that he would fall within, based upon his criminal record for purposes of this negotiated settlement, has agreed to be sentenced to persistent offender at 45 percent to a 12 year sentence.

COURT: 12 or 9?

[STATE]: It should be 12. Does the paperwork say 9? It should be 12.

COURT: [To the petitioner] I want to make sure that you understand. I am sure that your lawyer has explained to you that normally speaking a person that does not have at least two felony convictions . . . would be eligible for release after at least 30 percent . . . . That doesn't mean you are going to be released. It means you will be eligible to be released. Only those persons who have two or more felonies can be sentenced where their earliest release date is 45 percent. However, on occasion, the parties may agree that it is in their best interest to forego the sentencing law as it pertains to the number of felony convictions a person has and agree to accept a sentence even though they

-3-

may not normally fall within that range. In your case the reason for doing that is that you are coming out of 100 percent range down to 45 as a result of this negotiated settlement. That would be in your best interest. Do you understand why you are being sentenced to 45 percent even though you don't have two prior felonies in your background?

[PETITIONER]:       Yes, sir.

COURT:              Do you have any questions at all about the agreement that you have reached with the State in this matter?

[PETITIONER]:       No, sir.

COURT:              All right. The Court will find that to be acceptable. The Court will enter the judgments as entered between the parties.

The hearing was concluded at this point. Thereafter, the petitioner filed a petition for post-conviction relief alleging the ineffective assistance of counsel. He claimed the attorney who represented him during the plea negotiations advised him incorrectly on sentencing issues which resulted in an unknowing and involuntary guilty plea. He asserted that at the time he entered his plea of guilty, he believed his agreed sentence was nine years with thirty percent release eligibility but also that the sentence was suspended except for eleven months and twenty-nine days.

At the post-conviction hearing, the attorney who represented the petitioner during his plea proceedings testified that she met with him at least twenty or twenty-five times. She said the initial indictment was for two counts of especially aggravated kidnapping, a Class A felony, and two counts of aggravated assault, a Class C felony. She said she told him the range of punishment was from fifteen to sixty years for the Class A felony offense. She admitted that when the petitioner entered his first guilty plea, she had forgotten that conviction for an aggravated kidnapping offense required one hundred percent service. She said she made arrangements to withdraw the guilty plea on the day she discovered her error. She said that the state and trial judge allowed the plea to be withdrawn and that she renegotiated a second agreement. She denied telling the petitioner he would serve eleven months and twenty-nine days or any other amount of time before he would be released. She said she informed him that his sentence would be determined by the trial court after a hearing. She said she was aware that the petitioner had problems with reading and comprehension and that his educational level was below average. She said she reviewed the plea agreement with him and let him read it. She said he did not indicate to her that he did not understand the document. She said she also explained the petitioner's rights to him and which of those rights he would waive by pleading guilty.

-4-

She said that when the new plea agreement was negotiated, she told the petitioner that in order to plead to a lower class offense and get rid of the especially aggravated kidnapping charge, he would have to plead to a sentence outside his normal range. She said that she explained what it meant to "plead outside the range" and that this was necessary to reduce the charge to aggravated assault. She said he had questions about his release eligibility, so she calculated forty-five percent of the twelve-year sentence offered by the state, which was 5.4 years. She said she told him that this was the date he was eligible for parole but that the release date would actually be based upon his behavior while in the penitentiary. She said she discussed the new offer with him, let him read the agreement, and explained the differences between the new agreement and the former. She said the petitioner had no questions afterward. With regard to the plea hearings, she said she advised the petitioner to answer the trial court's questions truthfully. She said that the second plea agreement with the state was for twelve years, not nine years, and that the error on the judgment form was clerical in nature. She said she made no promises or guarantees concerning sentencing to the petitioner.

On cross-examination, the attorney testified that she did not pressure the petitioner to accept the state's offer and that she would have been just as happy to go to trial. She said her job was to present her clients' options to them and let them decide what to do. She said that she reviewed the plea agreement with the petitioner and that if at any point he appeared to misunderstand some part of it, she went back over it with him until he acknowledged he understood. She said that she did not require the petitioner to accept either plea agreement on the day she presented them but suggested that he talk them over with his family first. She said that when she presented the second plea offer, he considered it for two or three days before he accepted it. Regarding the judgment form on which the sentence length was erroneously marked "9" and later changed to a "12," she said the clerical error could not have confused the petitioner because he never saw the form.

The petitioner testified that he completed the ninth grade in high school but that he could read and write only at third or fourth grade levels. He said he informed his attorney of this fact. He did not recall discussing his first plea agreement with his attorney, but he recalled his sentence was to be nine years, suspended except for eleven months and twenty-nine days. He said this was his understanding when he entered his first plea. When asked whether he read the plea agreement form, he replied that he "looked at it the best [he] could." He admitted signing the form but said that no one reviewed it with him or read it to him. He recalled that the trial court asked him questions at the first plea hearing and that he indicated to the court he understood what was happening. He also recalled that the trial court asked him if he had any questions and that he answered negatively. He claimed that he said "no" because he was told to answer the trial judge with "yes, sir" or "no, sir" when asked questions and that he had no questions at that time. He recalled speaking with his attorney about her mistake concerning the first plea agreement. He said he expected the second deal to be better. He said that instead of the suspended sentence, however, the second agreement gave him a sentence of twelve years with forty-five percent release eligibility. Nevertheless, he said that he believed he would still be in jail only eleven months and twenty-nine days. The petitioner was shown the written plea agreement, which stated in large lettering that the petitioner pled as a "Range III offender (45%), taking a sentence of 12 years," and admitted signing the form, but he said he only

looked at the agreement and did not read it. He admitted telling the trial court at the second plea hearing that he read the document but explained he did so because he was instructed to answer questions. He said no one reviewed the second petition with him or read it to him. He said that he has not been seen by a doctor for mental difficulties and that he was not taking any medication or under the influence of drugs or alcohol at the time of either hearing.

On cross-examination, the petitioner admitted giving a false answer when the trial court questioned him about whether he read the document. He explained that his attorney instructed him to answer yes or no, "either way," to whatever question was put to him. He admitted his attorney also instructed him to answer all questions truthfully. He said that he agreed to a sentencing hearing to determine his sentence under the first plea agreement and that the agreed sentence was to be nine years, suspended to eleven months and twenty-nine days. He admitted that nothing was said at the first hearing concerning the nine-year suspended sentence and that nothing in the plea agreement referred to a nine-year suspended sentence. He claimed no one explained sentencing ranges to him. He admitted signing the second agreement, seeing the language which stated the sentence would be twelve years, and not seeing the number "9" or "11 months and 29 days" anywhere on the agreement form. He said his attorney never explained that he was a Range I offender based on his criminal history or that he had to plead as a Range III to get the more serious charge dropped. Then he admitted that his attorney told him the best deal he could get would be a sentence of twelve years at forty-five percent and that the second agreement he signed was for such a sentence. He said that if he had known anything about the law, however, he would never have agreed to give up his sentence of eleven months and twenty-nine days for a sentence of twelve years. He conceded, though, that the documents did not reflect he ever had such a sentence.

Leslie McCormick, the petitioner's brother, testified that he was present during some of the meetings the petitioner had with his attorney and that the attorney told them the petitioner would receive a nine-year sentence and serve 3.4 years. He said that the next time he accompanied the petitioner, the attorney told them that nine years was going to "go away" but that the petitioner would not receive twelve years and would not serve more than three years. He said the petitioner understood that if he were granted a new trial and found guilty, he could serve fifteen to twenty-five years at one hundred percent.

At the conclusion of the hearing, the trial court noted that the petitioner swore to tell the truth in both guilty plea hearings but found that he "gave whatever answer fit, not once, but on two separate occasions." The trial court found that the petitioner's rights and the sentencing ranges were explained to him in detail and that no mention was made of a nine-year sentence or a suspended sentence during either guilty plea hearing. The trial court noted that the petitioner did not answer truthfully when asked if he understood the plea petition, that the petitioner told the court no one had threatened or promised him anything concerning his plea, and that the petitioner said he had no questions during the plea hearings, but that everything had changed since then. The trial court found the credibility of the petitioner highly suspect and accredited the testimony of the attorney. The trial court also found that no promises were made to the petitioner and that the petitioner knew what his

sentences would be. The trial court concluded the facts did not justify setting aside his guilty plea, which was voluntarily and freely given.

## ANALYSIS

On appeal, the petitioner contends that the trial court erred by dismissing his petition. He argues that he received the ineffective assistance of counsel when his attorney gave him erroneous advice concerning his plea and resulting sentence and that this advice caused his guilty plea to be unknowing and involuntary. The state contends that the petitioner received the effective assistance of counsel and that his guilty plea was knowing and voluntary. We agree with the state.

When a claim of ineffective assistance of counsel is made, the burden is upon the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. See Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989). To satisfy the requirement of prejudice when the petitioner entered guilty pleas, the petitioner must demonstrate a reasonable probability that, but for counsel's errors, she would not have pled guilty and would have insisted on going to trial. See Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985); Bankston v. State, 815 S.W.2d 213, 215 (Tenn. Crim. App. 1991). In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. In reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

The burden was on the petitioner in the trial court to prove by clear and convincing evidence the factual allegations that would entitle him to relief. T.C.A. § 40-30-110(f). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). Because the trial court's conclusions regarding the effectiveness of counsel involve mixed questions of law and fact, our review is de novo with no presumption of correctness.

At the post-conviction hearing, the attorney testified that she met with the petitioner a minimum of twenty times and that she explained the sentencing issues involved, including the ranges associated with the offenses. She admitted that she made an error in that she neglected to inform the petitioner that the offense to which he pled guilty carried a sentence requiring one hundred percent service. However, she made arrangements for him to withdraw the guilty plea as soon as she discovered the error. She explained to the petitioner what it meant to plead "outside the range" and why it was necessary to reduce the severity of the pled offense. When the petitioner had questions about his release eligibility, she calculated his potential release date to be after 5.4 years of service and explained that the actual release date would be based upon his behavior while incarcerated. She discussed the second plea offer with the petitioner, let him read the agreement, and explained the

differences between the new and former agreements. She said the petitioner had no questions afterward, but apparently he did.

The record reflects the petitioner was not truthful in his responses to the trial court during either guilty plea hearing. The petitioner told the trial court that he read his guilty plea petition and understood it. He also said he understood both the rights he was waiving and the range of punishment for the offenses involved in his case. He affirmed that no promises were made to him concerning his guilty plea. On appeal, he claims that he understood none of these things and that his attorney promised him a nine-year sentence suspended to eleven months and twenty-nine days. However, this sentence is not mentioned in either plea agreement or discussed during either guilty plea hearing. The issue in this appeal turns on the credibility of the petitioner as compared with his attorney. The trial court found the attorney's testimony credible and the petitioner's testimony incredible.

The trial court also found that the petitioner's rights and the sentencing ranges were explained to him in detail, that a nine-year sentence and a suspended sentence were not discussed during either guilty plea proceeding, and that no promises were made to the petitioner. The record does not preponderate against the trial court's findings. Instead, it reflects that the trial court made efforts to ensure the petitioner understood his plea, the consequences of his plea, and the rights he was waiving. The petitioner admitted that his attorney informed him the best deal would be a sentence of twelve years at forty-five percent release eligibility and that the agreement he signed was for this sentence. The guilty plea petition signed by the petitioner states, in large writing located two inches above his signature, that his sentence would be twelve years. The petitioner failed to prove his allegations by clear and convincing evidence. We conclude that the petitioner did not receive the ineffective assistance of counsel and that his guilty plea was knowing and voluntary.

Based on the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, JUDGE